## Charles Beck, Plff. in Err., *v.* Kittanning Water Company.

An inhabitant of a borough has no such privity in a contract between the borough and a water company, under which water is furnished to the bor-

---

Cited in House v. Houston Waterworks Co. 88 Tex. 233, 28 L. R. A. 533, 31 S. W. 179, holding that a private citizen cannot maintain an action against a water company for failure to furnish water, although his property was burned on account of such failure; and Stone v. Uniontown Water Co. 9 York Legal Record, 179, 4 Pa. Dist. R. 431, 16 Pa. Co. Ct. 328.

NOTE.—So, it has been held that the municipality is not liable for loss by fire, where water could not be furnished by reason of a defective reser-

ough, as will enable him to sustain an action against the water company for a loss by fire, upon the ground that the failure of the company to supply water prevented the extinguishment of the fire.

(Argued October 19, 1887.   Decided October 31, 1887.)

October Term, 1887, No. 135, before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to the Common Pleas of Armstrong County to review a judgment of compulsory nonsuit in an action in case for damages for failure of the defendant water company to furnish water at the time of a conflagration on plaintiff's premises.   Affirmed.

The declaration as first filed alleged that the defendant was a corporation incorporated for the purpose of supplying the inhabitants of the borough of Kittanning, for pay, fresh water, and that it was its duty to maintain and furnish a sufficient supply; that the plaintiff was a resident of said borough and was the operator and lessee of a brew house therein and the owner of personal property on the premises, and paid water rates demanded by defendant; that on October 19, 1883, a conflagration broke out on plaintiff's premises, without his fault, and caused great damage and loss to plaintiff because of defendant's failure to furnish water, it having permitted the supply to fail and be exhausted.

Afterwards a second count was added to the declaration, alleging that the defendant on October 13, 1871, entered into a contract with the borough of Kittanning, whereby the defendant, in consideration of the yearly sum of $500, undertook to furnish the borough with a sufficient supply of water to be used in the extinguishment of fires, and that the borough paid such sum annually; that the defendant, under said contract, and in consideration of $2,500 paid it by the borough, put down mains and fire plugs; that the money paid defendant by the borough was raised by taxation of the inhabitants; that plaintiff was an inhabitant and taxpayer, and in possession of the premises described, on which he had fixtures, stock, etc.; that there was a fire plug convenient to plaintiff's premises; that a fire broke out upon the

voir.   Grant v. Erie, 69 Pa. 420, 8 Am. Rep. 272; Stone v. Uniontown Water Co. 4 Pa. Dist. R. 431, 9 York Legal Record, 179, 16 Pa. Co. Ct. 328.

For a full presentation of the authorities on this subject, see Farnham on Waters, pp. 821, 830, 844.

premises, without plaintiff's fault; that when the fire was discovered, the borough fire companies came with their hose carriages and hose, but the defendant negligently permitted the water mains and fire plugs to be without a sufficient supply of water to be thrown upon the building, and negligently shut off from its mains and the fire plugs the customary supply of water, by reason whereof the fire destroyed the brew house and the property therein, to plaintiff's great damage; and that the fire could have been extinguished without damage to plaintiff, had the usual and ordinary supply of water been furnished by defendant.

The defendant pleaded not guilty.

The contract between the water company and the borough was as follows:

Agreement, made the 13th day of October, A. D. 1871, between the Kittanning Water Company and the borough of Kittanning, Witnesseth: That the said water company hereby agree and bind themselves in the building and construction of their works to put into their distributing pipes twenty-one fire plugs of the Lowery patent, at the intersection of streets or such other convenient and suitable places as the borough authorities may designate, and after the works go into operation to furnish to the borough aforesaid a full and sufficient supply of water, to be used by the borough authorities in the extinguishment of fires, for using in and for testing and cleaning fire engines, and in sprinkling the streets, but for no other purpose.

"The fire plugs, when completed, to be the exclusive property of and under the control, protection, and care, and to keep in good repair, order, and condition, by the borough authorities. The said borough to keep the plugs locked or otherwise so secured that no person shall have access to them, except by the direction of the borough authorities.

"In consideration whereof the said borough agrees to pay the said water company the sum of $2,500 for the fire plugs aforesaid; $1,250 thereof in six months after the date hereof, and the remaining $1,250 in nine months from the date hereof, by orders in the usual form bearing even date herewith respectively at six and nine months, and to be issued and delivered to said water company at the time of executing this contract. And the said borough further agrees to pay the said water company the

sum of $500 a year for the right and privilege of the use of water as aforesaid for the term of ten years, to commence when the said water company shall give the said borough authorities notice of their readiness to supply water as aforesaid. The water rent as aforesaid of $500 to be paid quarterly by orders in the usual form, the first payment to be made in three months after the notice as aforesaid of the water company of their readiness to furnish water, and every three months thereafter for the full term of ten years as aforesaid."

On the trial, the plaintiff testified on his direct examination, as follows, in reference to his contract with the water company:

*Q.* Where does the water come from that you get out of that hydrant?

*A.* From the Kittanning water works.

*Q.* Did you pay for the use of that water?

*A.* Yes, sir.

*Q.* How much?

*A.* I can't tell exactly now what I did pay by the year; I believe it was $36 a year.

On cross-examination, he testified as follows:

*Q.* With whom did you make the contract for water?

*A.* I believe it was in the office of the water works.

*Q.* Who with?

*A.* Mr. Meredith.

*Q.* What were you furnished water for?

*A.* They furnished me with water for any supply, I guess; for everything, so I understood.

*Q.* What was mentioned that you were to have water for when you were in the water company's office?

*A.* I don't know; I believe I talked with Mr. Meredith's father.

*Q.* Don't you know that his father has nothing to do with the water works?

*A.* I don't know; I believe I did talk to him, himself.

*Q.* What was your conversation; what did he say to you, and what did you say to him?

*A.* He said: "You can have water for that price for any use."

*Q.* Was there anything said about fire?

*A.* No, sir.

*Q.* Nothing about using water for fire purposes?

*A.* I don't believe we did; I can't recollect any more; I believe the contract was for the brewery: "You can use water for anything."

*Q.* Was not the contract that you were to use water for the boilers and for washing the kegs and for nothing else?

*A.* It was a contract for use; "for anything you use it," or what I needed.

*Q.* Was not the contract that you were to have water for the boiler, and for washing the kegs and for nothing else?

*A.* No, sir; that was not the contract.

*Q.* What else were you to have it for besides that?

*A.* I believe at the time we burned coal I was to have it to put the fire out in the furnace; I believe that was mentioned to Mr. Meredith that day.

*Q.* That is what you mean for fire purposes?

*A.* Yes, sir; fire purposes at any time.

When plaintiff rested, the defendant moved for a compulsory nonsuit, on the following reasons:

1. The plaintiff's case discloses that the water was turned off in the company's lines at the instance of the municipality of the borough of Kittanning for their purposes, and so remained turned off at the time of the fire.

2. The first count in the plaintiff's declaration contains no allegation or averment that the defendant owed to the plaintiff a legal duty to furnish him with water to extinguish fires, that is, either by statute, at common law, or by contract. The count, to be good, must contain facts which, if proved, show that a duty has been cast upon the defendant which in law he is bound to perform or answer in damages.

3. There is no proof submitted by the plaintiff that shows that the plaintiff has paid any money or other valuable thing for the privilege of using water for the extinguishment of fires out of the defendant's water works.

4. The second count of plaintiff's declaration sets forth the contents of a contract between defendant and the municipality of the borough of Kittanning, in which plaintiff was not named as a beneficiary and at the time of the making thereof was not a resident within said borough, and to which he is in no way privy.

5. The municipal corporation of Kittanning borough cannot,

by contract or otherwise, render the defendant responsible in damages for the nonperformance of that which the borough of Kittanning is not legally bound to perform, and for the neglect of which it cannot be compelled to answer in damages.

6. The plaintiff has failed to show a breach of any duty to him by the defendant for which the defendant can be made answerable in damages.

7. The contract between the defendant and the borough of Kittanning binds the defendant to furnish the borough of Kittanning a full and sufficient supply of water to be used by the borough authorities in the extinguishment of fires, etc.; and there is no evidence that the borough authorities or any person legally authorized by them sought to obtain water from any fire plugs in said borough on the night of the fire.

The court, CUMMIN, P. J., granted the motion, with the following opinion:

"After a very full and able discussion (by counsel) of the question involved in this motion, I arrive at the following conclusions: The evidence does not show any unlawful or wrongful act done by the defendant, nor any neglect committed by the defendant, which occasioned the injury to the plaintiff complained of. The evidence disclosed no duty due from the defendant to the plaintiff, the omission to perform which would sustain an action on the case. For these reasons and those assigned in the motion, the motion for a compulsory nonsuit is allowed and judgment of compulsory nonsuit is now entered. To which ruling of the court plaintiff's counsel take an exception, and at their request bill sealed."

Subsequently the plaintiff moved the court *in banc* to take off the judgment of nonsuit, which motion was refused, and this action by the court below is assigned for error.

*J. R. Henderson, H. N. Snyder, William S. Pier,* for plaintiff in error.—The second reason assigned by the learned court for entering the nonsuit is that "the evidence discloses no duty due from the defendant to the plaintiff, the omission to perform which would sustain an action on the case."

We contend that the evidence does disclose such a duty, and a threefold duty: (1) A duty arose through the defendant's acceptance of its charter and franchises which were in evidence,

and undertaking to perform the objects of its incorporation; (2) a duty arose out of its contract with the borough of Kittanning to supply water to quench conflagrations; (3) a duty arose under its contract with the defendant to supply water for use in his brewery.

1. When the legislature passed the act to incorporate the Kittanning Water Company (March 12, 1866), and thereby granted to certain individuals as its corporators certain franchises including the right of eminent domain, and to exercise these franchises for pay and for profit, it is not to be presumed that it intended to confer a gratuity, or a charity, upon the corporators, or that they were specially selected from among their fellow citizens as objects of reward or gift. The right of eminent domain is never granted for a private use, and can only be exercised for the public benefit. Palairet's Appeal, 67 Pa. 479, 5 Am. Rep. 450.

It was because the erection of a corporation to supply water to the borough of Kittanning and its citizens would be a public benefit that the legislature granted such franchises as might reasonably insure the performance of that public benefit. The corporators were at liberty to accept or refuse these franchises. They elected to accept them, were duly chartered under the act, and undertook their performance; they erected water works, laid pipe lines in the public streets, made contracts for the supply of water and enjoyed the profits of their enterprise. This raised a duty of the defendant corporation to perform the purpose of its incorporation, to wit, to furnish a sufficient supply of pure water to the community dwelling within the borough of Kittanning. Thomas v. West Jersey R. Co. 101 U. S. 71, 25 L. ed. 950; Lumbard v. Stearns, 4 Cush. 60; King v. Hastings, 1 Dowl. & R. 148.

The purpose of the corporation was to introduce from any stream of water within the county of Armstrong, into the said borough of Kittanning, a sufficient supply of pure water. No other language is used, and in the act there is no limitation of the objects of the supply. If our deduction and the authorities heretofore cited are correct, this makes out a statutory duty owed by the defendant to the plaintiff, to furnish a sufficient supply of water for ordinary purposes, including the extinguishment of fires. In support of this position we cite the following authorities: Wharton, Neg. § 444; Atkinson v. Newcastle &

G. Waterworks Co. L. R. 6 Exch. 404, referred to in Metallic Compression Casting Co. v. Fitchburg R. Co. 109 Mass. 282, 12 Am. Rep. 689, and, although overruled in the court of exchequer division (L. R. 2 Exch. Div. 441) on appeal, it was for reasons which, when stated, make its authority even stronger for this plaintiff. See also Lyme Regis v. Henley, 3 Barn. & Ad. 77.

2. We contend that a duty arose to be performed by the defendant, for the benefit of all and each of the inhabitants of the borough of Kittanning, out of its contract with said borough. Wharton, Neg. §§ 437, 438, citing Pippin v. Sheppard, 11 Price, 400, and other cases, says: " 'Privity of contract' is not in such case essential. If a carrier employed by me to transport my servant on the cars neglects his duty, my servant cannot sue him on the contract, because there is no privity of contract between the two; and if the contract is to be sued upon, it must be by myself. But the servant, being the party injured, may sue the carrier in an action on the case, in which privity of contract is not necessary, but which is based on injuries directly received." See also Pennsylvania & O. Canal Co. v. Graham, 63 Pa. 290, 3 Am. Rep. 549, cited with approval in Brown v. Susquehanna Boom Co. 109 Pa. 69, 58 Am. Rep. 708, 1 Atl. 156, and also in Oil City Petroleum Bridge Co. v. Jackson, 114 Pa. 321, 6 Atl. 128.

The objection to the first count of our declaration, which is alleged as the second reason for the nonsuit, might have been alleged as ground for demurrer in a proper proceeding; but a motion for nonsuit is to be taken as a demurrer to the evidence. The question, then, is not whether the declaration is good, but whether the evidence, if the jury believe it, makes out a case. Smyth v. Craig, 3 Watts & S. 14; Bevan v. Insurance Co. 9 Watts & S. 187.

We submit that if there were a technical difficulty in the declaration (which we maintain there was not), it could have been amended at any time; and if the evidence disclosed a case for the jury in a trial on the merits the court should allow an amendment and not enter a nonsuit.

*McCain & Leason,* for defendant in error.—That the first count is totally defective is established by Davis v. Clinton

Waterworks Co. 54 Iowa, 59, 37 Am. Rep. 185, 6 N. W. 126; Foster v. Lookout Water Co. 3 Lea, 42; Nickerson ·v. Bridgeport Hydraulic Co. 46 Conn. 24, 33 Am. Rep. 1; Marvin Safe Co. v. Ward, 46 N. J. L. 19.

The same objections apply with equal force to the second count, which declares on a contract between the defendant and the borough of Kittanning, to which the plaintiff was not a party but claims to be a beneficiary.    But, treating it as good, has the plaintiff a right of action against the borough ?    If he has not, if the borough owed him no duty to put out the fire, how can the plaintiff expect to recover against one who contracted with the borough to do that which was optional with the borough to do or not to do for the plaintiff's benefit?    In short, does the doctrine of *respondeat superior* apply in this case?    The authorities show that it does not.    See Carr v. Northern Liberties, 35 Pa. 330, 78 Am. Dec. 342; Grant v. Erie, 69 Pa. 420, 8 Am. Rep. 272.

The plaintiff argues that the defendant was in duty bound to furnish sufficient water to extinguish fires because of its franchises, and had assumed the duty as evidenced by its contract with the borough.

The declaration does not disclose it, but plaintiff shows by evidence that among the franchises granted to the defendant is that of eminent domain; and because of this franchise being conferred the defendant was bound to furnish water for extinguishing fires, as the corporation was chartered for a public use or benefit.    There is a difference between a corporation chartered for the benefit of the public and one chartered for private enterprise in which the public may have an interest.    The first are municipal corporations; the second are private corporations for the exclusive benefit of the incorporators.    Because they purpose engaging in a work or business that will benefit the public as well as profit themselves, the commonwealth has sometimes conferred upon such as these the right of eminent domain, in order to facilitate the benefit to be received by the public.    For the negligent exercise of this right corporations are held strictly responsible.

This distinction is stated in Bailey v. New York, 3 Hill, 531, 38 Am. Dec. 669, as follows:  "But if the grant was for purposes of private advantage and emolument, though the public

may derive a common benefit therefrom, the corporation *quoad hoc* is to be regarded as a private company."

Brooklyn v. Brooklyn City R. Co. 47 N. Y. 485, 7 Am. Rep. 469, and Robinson v. Chamberlain, 34 N. Y. 389, 90 Am. Dec. 713, decide that a person contracting with the state is liable for negligence when it is a contract to perform a duty to the public for a neglect of which the state, but for its sovereignty, would be liable to the party injured.

See also Atkinson v. Newcastle & G. Waterworks Co. L. R. 2 Exch. Div. 441.

In the present case the act incorporating the Kittanning Water Company states the purpose in these words: "For the purpose of introducing from any stream of water within the county of Armstrong into said borough of Kittanning a sufficient supply of pure water." If the legislature had intended to bind the defendant to furnish water to extinguish fires and to impose it as a duty, it would have been so stated in the act.

It will not do to say that the right of eminent domain will cover every conceivable covenant for water, and hold the defendant liable whenever any person in the borough of Kittanning found he needed water and did not have it. See Nickerson v. Bridgeport Hydraulic Co. 46 Conn. 24, 33 Am. Rep. 1.

Foster v. Lookout Water Co. 3 Lea, 42, is a similar case. In the opinion the court says: "Such a stipulation as the one in controversy cannot be construed as turning the water company into a public officer or a contractor engaged to perform the duties of a public officer, who is liable in damages for negligence to anyone sustaining special injury in consequence thereof," citing Robinson v. Chamberlain, 34 N. Y. 389, 90 Am. Dec. 713.

There is no such public office known to our laws as the supplying water for the extinguishing of fires. See also Davis v. Clinton Waterworks Co. 54 Iowa, 59, 37 Am. Rep. 185, 6 N. W. 126; and Marvin Safe Co. v. Ward, 46 N. J. L. 19.

PER CURIAM:

The plaintiff in this case had no contract with the defendant for a supply of water for the extinguishment of fires; hence, it owed him no duty in this respect; and on the basis of such contract he had, of course, no cause of action. As to the contract with the borough, with that he had nothing to do. That was a matter between the municipality and the water company; and

his interest in it is too remote to raise such a privity therein as would enable him to maintain this suit.

The judgment of the court below is affirmed.